<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ELVIRO RAMIRO VICENTE CIFUENTES, <br><br>      *Petitioner*, <br><br>      v. <br><br> SOTO, et al., <br><br>      *Respondents*. | Civil Action No. 25-18029 <br><br> **OPINION** <br><br> December 31, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon the Petition of Elviro Ramiro Vicente Cifuentes ("Petitioner") for a Writ of Habeas Corpus under 28 U.S.C. § 2241, together with a Motion for Temporary Restraining Order. (ECF Nos. 1., 2.) Petitioner challenges the legality of his detention by U.S. Immigration and Customs Enforcement ("ICE"), asserting that he is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a) or immediate release. (ECF No. 1.) Respondents oppose the Petition, asserting that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) in accordance with the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (ECF No. 4.) The Court has considered the parties' submissions and the record before it. For the reasons set forth below, the Petition is GRANTED.

## I.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Petitioner is a Guatemalan national presently detained by Respondents at the Delaney Hall Detention Facility in Newark, New Jersey. (ECF No. 1 ¶ 1.) Prior to his detention, Petitioner

resided in Howell, New Jersey, with his mother, his younger sister, and his partner, who is a United States citizen.  (*Id.* ¶ 30.)

In or about December 2013, Petitioner arrived at the United States - Mexico border in Arizona with his mother and younger sister.  (*Id.* ¶ 2.)  All three are Guatemalan nationals.  (*Id.* ¶31.)  Upon information and belief, immigration authorities issued expedited orders of removal to the family pursuant to § 235(b)(1) of the Immigration and Nationality Act ("INA").  (*Id.* ¶ 32.)  Petitioner's mother requested a credible fear interview at that time, but no such interview was conducted.  (*Id.* ¶ 33.)  Instead, the Department of Homeland Security ("DHS"), through Customs and Border Protection ("CBP"), paroled Petitioner, his mother, and his sister into the United States.  (*Id.*)

More than a decade later, on November 14, 2025, Petitioner's mother was scheduled for a credible fear interview with United States Citizenship and Immigration Services ("USCIS").  (*Id.* ¶ 33.)  Petitioner and his sister attended the interview as derivatives of their mother's application.  (*Id.* ¶ 4.)  On that same day, the asylum officer issued a negative credible fear determination as to all three applicants.  (*Id.* ¶ 5.)  Following the issuance of that determination, DHS detained Petitioner, his mother, and his sister.  (*Id.*)

Petitioner timely requested review of the negative credible fear determination by an Immigration Judge ("IJ"), pursuant to 8 C.F.R. § 1003.42(a).  (*Id.* ¶ 6.)  Despite that request, from November 14, 2025 to the present, the Executive Office for Immigration Review ("EOIR") has not scheduled a hearing for IJ review.  (*Id.* ¶ 7.)  Under the governing regulation, the IJ is required to conclude such review "to the maximum extent practicable within 24 hours, but in no case later than 7 days" after the supervisory asylum officer concurs in the negative credible fear determination. 8 C.F.R. § 1003.42(e).  (*Id.* ¶ 8.)  Upon information and belief, no Form I-869,

Record of Negative Credible Fear Finding and Request for Review, has been served on or filed with the Immigration Court.  (*Id.* ¶ 9.)

During this period of inaction, Petitioner has remained continuously detained.  (*Id.* ¶ 10.) He asserts that his continued detention, extending well beyond the regulatory time limits prescribed by 8 C.F.R. § 1003.42(e), is unlawful.  (*Id.* ¶ 11.)  Petitioner further alleges that he poses neither a flight risk nor a danger to the community, and that he has no arrests or criminal history in the United States or Guatemala.  (*Id.* ¶ 37.)

## II.     LEGAL STANDARD

### A.  Habeas Jurisdiction

Under 28 U.S.C. § 2241, federal district courts retain jurisdiction to review the legality of executive detention, including immigration custody.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).  A district court may grant habeas relief if the petitioner "is in custody in violation of the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Jurisdiction lies in the district of initial custody and is unaffected by subsequent transfers.  *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445–446 (3d Cir. 2021); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

### B.  Statutory Detention Authority

The Immigration and Nationality Act provides two principal sources of prefinal removal order detention authority.   First, § 1225(b) mandates detention of certain "applicants for admission" – persons seeking entry who have not been formally admitted.  Such individuals are subject to mandatory detention during inspection and removal processing.  Second, § 1226(a) authorizes—but does not require—detention of noncitizens already "present in the United States," subject to discretionary bond proceedings.

The distinction between § 1225(b) and § 1226(a) is critical.  Under § 1225(b), detention is mandatory and typically brief.  Under § 1226(a), detention is discretionary and constitutionally constrained by due process.  Detention under § 1226(a) attaches where DHS encounters a noncitizen within the interior after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual is encountered "seeking admission" at the border or its functional equivalents.  *Jennings v. Rodriguez*, 583 U.S. 281, 297–298 (2018); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (distinguishing detention of "arriving aliens" under § 1225(b) from detention of persons apprehended in the interior whose presence in the United States was a settled and ongoing fact).

### III.   ANALYSIS

This case presents a narrow but consequential question: whether Petitioner's present detention is authorized by § 1225(b)(1), as Respondents assert (ECF No. 4 at 1), or instead falls under § 1226(a).  The answer turns on two issues: (1) whether Petitioner is properly classified as an "applicant for admission" on the basis of an expedited removal order issued in December 2013 (ECF No. 4-1); and (2) whether his subsequent apprehension in November 2025, more than ten years after entry and long after DHS paroled him into the interior (ECF No. 1 ¶ 33) triggers the statutory regime governing interior enforcement rather than border processing.  The record establishes that Respondents cannot sustain their burden on either point.

#### A.  The 2013 Expedited Removal Order

Respondents rely on an expedited removal order issued in December 2013 when Petitioner crossed the southern border.  (ECF No. 4-1)  Yet the government's own conduct undermines its basis for Petitioner's detention.  DHS paroled Petitioner into the interior under § 212(d)(5)(A), permitted him to reside in New Jersey, and accepted a properly filed asylum application.  (ECF

No. 1 ¶¶ 30-33.)  Each action is inconsistent with the maintenance of a live, unexecuted expedited

removal order.  *See Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *9 (D.N.J. Sept. 26,

2025) (examining the real-world immigration posture of the noncitizen when assessing statutory

authority).  DHS cannot now retroactively resurrect that order to justify detention under § 1225(b)

absent evidence that the order ever took legal effect.  (ECF No. 4.)

Accordingly, the Court finds that Respondents have not carried their burden to show that

the 2013 order provides a lawful basis for treating Petitioner as an applicant for admission.

### B. Petitioner's Apprehension in the Interior

Petitioner's present detention must be justified under the statute governing his November

2025 apprehension.  The undisputed facts demonstrate that, at the time ICE arrested him, Petitioner

had resided in the United States for more than ten years, lived with his U.S. citizen partner, was

listed as a derivative on his mother's asylum application, and had been permitted by DHS to remain

in the interior under parole.  (ECF No. 1 ¶¶ 1-7, 30.)  He was apprehended not at a port of entry

or at the border, but at the USCIS Asylum Office, where he appeared for a scheduled interview.

(*Id.* ¶¶ 4-5.)

The Third Circuit has instructed that detention authority turns on the noncitizen's statutory

posture at the time of arrest. *See Zumba,* 2025 WL 2753496, at *4 (distinguishing between

detention authority for arriving aliens versus individuals apprehended in the interior whose

presence was settled and ongoing).  Section 1225(b) applies only to individuals undergoing

inspection or seeking admission at the border or its functional equivalents. *See Jennings,* 583 U.S.

at 297-298.  By contrast, § 1226(a) governs detention of individuals already in the United States –

particularly those with substantial ties, or pending applications. *Id.*

The question is not whether DHS can identify a historical event at the border, but whether the individual was, at the moment of arrest, meaningfully "seeking admission" within the purview of § 1225(b). Here, Petitioner was plainly not. Rather, he fits squarely within § 1226(a). Petitioner was not encountered as a recent entrant, nor was he in the process of admission. (ECF No. 1 ¶¶ 30-34.) He was living in the interior, pursuing affirmative relief, subject to ongoing USCIS adjudication, and fully integrated into the domestic enforcement system. (*Id.*) Nothing in § 1225(b) or its interpretive case law permits DHS to treat such a person as an arriving alien engaged in inspection. *See Jennings,* 583 U.S. at 297-298; *Bethancourt Soto v. Soto*, No. 25-16200, 2025 WL 2976572, at *5–6 (D.N.J. Oct. 22, 2025).

The government relies heavily on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but that decision cannot overcome the statutory text or the framework articulated by the Supreme Court and the Third Circuit. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) (while "agencies have no special competence in resolving statutory ambiguities," "[c]ourts do"). Notably, *Yajure Hurtado* concerns individuals whose arrival status was already established under a valid expedited removal order. Where the existence, service, and legal effect of the underlying order are disputed, *Yajure Hurtado* provides no basis for recategorizing an interior arrest as a border encounter. Notably, the Government does not provide the expedited removal order or enter it as part of the record here. Moreover, the Board cannot expand § 1225(b) beyond the limits of the statute or the Supreme Court's construction in *Jennings*.

Although the Government asserts that Petitioner entered without inspection or parole, it nevertheless concedes in its answer that Petitioner was "released [] into the United States" and later "paroled into the United States" following a "positive credible fear determination if returned

to Guatemala"—expressly acknowledging that DHS affirmatively allowed Petitioner to enter and remain in the country prior to his re-detention.  (ECF No. 4 at 4.)  *See Rodriguez v. Rokosky,* No. 25-17419, 2025 WL 34856298, at *2 (D.N.J. Dec. 3, 2025) (granting habeas petition of noncitizen who was initially detained under § 1225(b)(1), because the petitioner was granted parole after entry).  Furthermore, the plain language of the statute under which the Government currently detains Petitioner defines an "arriving alien" as someone "who has not been admitted or paroled into the United States[.]"  8 U.S.C. § 1225(b)(1)(A)(iii).

For these reasons, Petitioner's custody is not authorized by § 1225(b), serves no legitimate purpose, and warrants habeas relief. *See Zumba,* 2025 WL 2753496 at *4.

### C. The Court Orders Petitioner's Release

Petitioner has now been detained for several weeks under 8 U.S.C. § 1225(b), even though the administrative record contains no properly served or legally operative expedited removal order capable of triggering that statute.  (ECF No. 4-1.)  His lack of criminal history, his continuous residence, and his compliance with immigration requirements underscore the necessity of individualized assessment.  (ECF No. 1 ¶¶ 30-37.)  The government's position would render Petitioner mandatorily detained indefinitely on the basis of a 2013 expedited removal order, prolonging a detention that the Government cannot ground in any valid statutory authority.

The flexibility of habeas relief allows the Court to restore Petitioner to the position he would have occupied had DHS adhered to law.  In light of Respondents' failure to demonstrate a lawful basis for detention under § 1225(b), and consistent with the Court's authority to "dispose of the matter as law and justice require," 28 U.S.C. § 2243, immediate release is the appropriate remedy.

IV.    <u>**CONCLUSION**</u>

For the reasons set forth above, Petitioner's mandatory detention under § 1225(b) violates the INA and the Due Process Clause of the Fifth Amendment.  The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) is **GRANTED**. Respondents are ordered to release petitioner from detention IMMEDIATELY on this date, and facilitate his return to the District of New Jersey.  Following his release, respondents are permanently enjoined from rearresting or otherwise detaining petitioner under § 1225(b) and may not arrest or otherwise detain petitioner under § 1226(a) for 14 days.

An appropriate order accompanies this opinion.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**
